IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD MCDOUGALL, Trustee, | ) ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | )  CASE NO.: 10-CV-00355 ) |
| MESSINA TRUCKING, INC., et al., | )  Judge Robert M. Dow, Jr. ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, Trustee, (collectively "The Fund") sued Messina Trucking, Inc., Auburn Supply Company, Inc., Utica Equipment Company, Messina Products, L.L.C., (collectively, "Messina Control Group"), Stephen L. Messina, and Florence M. Messina, under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C.§ 1001, *et seq.,* for approximately $3 million, which represents the withdrawal liability that Messina Trucking incurred when it withdrew from the Fund in October 2007. [1]

The parties filed cross-motions for summary judgment [35, 40]. [2] The Fund claims that all of the defendants, both corporate and individual, are liable under section 1301(b)(1) of the MPPAA. Messina Control Group concedes that Messina Trucking and Utica are liable to the Fund for any withdrawal liability, but argues that the other entities

---

[1] Defendants Washington Lakes, L.L.C. and Messina Product Operations, L.L.C. previously were dismissed without prejudice.
[2] Defendants' motion for leave to file an oversized brief [33] is granted.

1

and Stephen and Florence Messina were not a "trade or business" and therefore are not liable for withdrawal liability. For the below reasons, the court determines that Auburn and Messina Products are liable for withdrawal liability, as they were under common control and were in a trade or business. The court also concludes that the Stephen and Florence Messina were not engaged in a trade or business and therefore escape liability. Accordingly, Plaintiffs' motion [40] is granted in part and denied in part and Defendants' motion [35] is granted in part and denied in part. In sum, Messina Trucking, Utica, Auburn, and Messina Products are liable for withdrawal liability; Stephen and Florence Messina are not.

**I.     Background**

The Pension Fund is a multiemployer pension plan under ERISA, administered by its trustee, Howard McDougall. Messina Trucking, Inc., a Michigan corporation, was bound by a collective bargaining agreement, under which it was required to make contributions to The Fund on behalf of certain employees. On October 13, 2007, Messina Trucking permanently ceased to have an obligation to contribute to the Fund or permanently ceased all covered operations, thereby effecting a "complete withdrawal," as defined in 29 U.S.C. § 1383. Consequently, on March 28, 2008, the Fund issued an assessment of withdrawal liability to Messina Trucking—and all other trades or businesses under common control with Messina Trucking—in the principal amount of $3,094,989.77, as determined under 29 U.S.C. 1381(b).[3]

In September 2008, the Messina Control Group initiated arbitration challenging the withdrawal liability, pursuant to 29 U.S.C. § 1401(a). Messina Trucking was unable

---

[3] Defendants dispute the amount of withdrawal liability assessed by the Fund. That dispute remains pending in arbitration and is of no consequence here.

2

to pay the full amount of the installments as they became due, and in January 2010, the Fund sent notice to Messina Control Group that its withdrawal liability payments were past due pursuant to 29 U.S.C. § 1399(c)(5)(A) and initiated this action.

### A. Messina Control Group

The Messina Control Group consists of Messina Trucking, Inc., Auburn Supply Company, Inc., Utica Equipment Company, and Messina Products, L.L.C. Each company is incorporated in Michigan. On October 13, 2007, at the time of the withdrawal, Stephen Messina and Florence Messina,[4] through their respective trusts, owned at least 80% of Messina Trucking, Auburn Supply, Utica, and Messina Products. Stephen is President and Florence is Vice President and Secretary of all of the companies in the Messina Control Group.

Auburn Supply Company owns property across the street from Messina Trucking. The Messinas purchased the property so that Messina Trucking could use it, and it is covered under Messina Trucking's liability insurance. In the past, Auburn also was actively involved in buying and selling aggregate materials. The parties dispute the timing of when these activities stopped, but agree that since they stopped (sometime in 2006 or 2007), Auburn's sole activity has consisted of leasing property to (1) truckers who pay $100 a month to park their trucks and (2) an ice cream shop that pays $625 per month for overflow parking. Auburn also continues to allow Messina Trucking to stockpile sand, top soil, and stone, and to store equipment on the property.

Messina Products, L.L.C.'s operating agreement states in part that "Members have adopted a business plan for the development of properties and for the production, sale and marketing of gravel for road, subdivision, City and community development,

---
[4] Stephen and Florence Messina have been married since 1964.

3

both wholesale and retail." Messina Products currently owns a 50% interest in Messina Lombardo, L.L.C. and the parties dispute whether it owns or has owned any land.[5]

### B. Stephen and Florence Messina

Stephen Messina and Florence Messina own at least 80% of Messina Trucking and the rest of the Messina Control Group through their trusts. Stephen purchased property at 6386 Auburn Road in Shelby Township, Michigan in 1963. Messina Trucking, Auburn Supply, and Utica all operate out of the 6383 Auburn property. For years, Messina Trucking paid rent for the use of the property, which Stephen and Florence deposited into their joint personal bank account. In 2005, Messina Trucking stopped paying rent for the use of 6386 Auburn due to lack of funds. While there is not and never has been a written lease for Messina Trucking's use of the property, in practice the Messinas pay the property taxes, Messina Trucking pays for the property insurance and utility bills, and all repairs and maintenance are done by Messina Trucking employees. Auburn and Utica never paid rent for their use of the property.

Stephen Messina also owns two properties located at 45245 Merrill Road and 45041 Merrill Road in Utica, Michigan (the "Merrill Road Properties"). The Messinas used money from their joint bank account to purchase the Merrill Road Properties. Stephen purchased the properties because they were adjacent to the 6386 Auburn property and it allowed him to build an addition onto one of the Auburn Property's existing structures. There also are several homes located on the Merrill Road Properties. The Messinas have leased one of the homes to a series of Messina Trucking employees, pursuant to written residential leases. The second home was also occupied by a tenant

---

[5] While the parties spent much ink on this issue, the Court will not address the disputed issue because the ownership of land is inconsequential to the outcome.

pursuant to a lease until she passed away after the withdrawal but before this action was filed. A third home has been leased pursuant to a written lease agreement since October 2002. Either Stephen or his daughter, Anna Messina, negotiates all terms of the residential leases and deposit all rent checks into the personal bank account of Stephen and Florence.

The shop foreman at Messina Trucking, Dennis Campbell, handles all maintenance of the Merrill Road Properties, though he is not paid extra for this work. All expenses incurred through fixing repairs at the Merrill Road Properties are paid by Messina Trucking. Messina Trucking employees also handle all lawn care and snow removal.

Stephen and Florence pay the property taxes and insurance on the Merrill Road Properties. During the 2005 to 2008 tax years, the Messinas reported rental income on Schedule E of their federal tax returns and deducted expenses accordingly.

## II. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III.    Analysis

Under ERISA, 29 U.S.C. §§ 1001-1371, as amended by the MPPAA, 29 U.S.C. §§ 1381-1461, an employer who ceases to contribute to a multi-employer pension fund is liable for withdrawal liability. See M*cDougall v. Pioneer Ranch Limited Partnership,* 494 F.3d 571, 574 (7th Cir. 2007). Withdrawal liability calculates the employer's proportional share of the "unfunded vested benefits" owed to its employees. *Id.*; 29 U.S.C. § 1381. "Congress established withdrawal liability . . . to ensure that when an employer withdraws from a pension plan, the financial burden of its employees' vested pension benefits would not be borne by the other employers in the plan." *Central States, Southeast and Southwest Area Pension Fund  v. Personnel, In*c., 974 F.2d 789, 791 (7th Cir. 1992).

Here, the parties do not dispute that Messina Trucking completely withdrew from the Fund on October 13, 2007, incurring withdrawal liability under ERISA as of that date. Congress extended ERISA withdrawal liability, however, to all "trades or business (whether or not incorporated) which are under common control." 29 U.S.C. § 1301(b)(1); *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Nagy Ready Mix, Inc., et al.*, 10-cv-358, 2011 WL 3021524, *3 (N.D. Ill. July 22, 2011). In other words, each trade or business under common control with the withdrawing employer becomes jointly and severally liable. *Id*.

The question before the court is whether the Messina Control Group and Stephen and Florence Messina are additionally liable under §1301(b)(1). "[T]o impose withdrawal liability on an organization [or individual] other than the one obligated to the fund, two conditions must be satisfied: (1) the organization [or individual] must be under common control with the obligated corporation; and (2) it must be a trade or business." *Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). The Messina Control Group concedes that the entities in question were under common control—the Messinas, through their trusts, owned at least 80% of each entity. *See* 26 C.F.R. § 1.414(c)-2; *Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP*, 738 F. Supp. 2d 840, 846 (N.D. Ill. 2010). Messina Control Group also admits that Utica is a trade or business and is, accordingly, liable. Therefore, the Court proceeds by considering only whether Auburn, Messina Products and each of the Messinas are a "trade or business" under §1301(b)(1).

A.  **Auburn**

Messina Control Group argues that despite the fact that Auburn was an employer—and thus a trade or business—at one time, it was not one on the October 13, 2007 withdrawal date and is not liable. But because Defendants admit that Auburn was an employer, this issue is reserved for determination by the arbitrator. See *Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119 (7th Cir. 1991) (explaining that once a district court "assures itself that the plan's claim is legitimate," the court "should order the making of interim payments and leave the rest to the arbitrator"); *Banner Indus., Inc. v. Central States., Southeast and Southwest Areas Pension Fund*, 875 F.2d 1285, 1291 (7th Cir. 1989) (noting that whether one remained an employer as of withdrawal is different from whether one ever became an employer). Although the issue is not properly before the Court, the Court notes that the MPPAA creates a "pay now, dispute later" scheme; thus, Auburn is currently liable, but can dispute the issue at arbitration. 29 U.S.C. §§ 1399(c)(2), 1401(d); *Central States Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001); *Central States, Southeast and Southwest Areas Pension Fund v. Warner & Sons, Inc.*, 2008 WL 4201014, at *2-*3 (N.D. Ill. Sept. 9, 2008).

B.  **Messina Products**

The Defendants argue that Messina Products should escape liability because it is not a trade or business. Rather, Defendants say, it is an investment vehicle. While the MPPAA does not define "trade or business," the Seventh Circuit has adopted the Supreme Court's test from *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S.

23, 35 (1987). See *Pioneer Ranch*, 494 F.3d at 577; *Central States, Southeast and Southwest Areas Pension Fund v. White*, 258 F.3d 636, 642 (7th Cir 2001). Under *Groetzinger*, in order to be considered a trade or business, an entity must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity. *Groetzinger*, 240 U.S. at 35. "One purpose of the *Groetzinger* test is to distinguish trades or business from investments, which are not trades or business and thus cannot form a basis for imputing withdrawal liability under § 1301(b)(1)." *Fulkerson*, 238 F.3d at 895.

The Fund first argues that the *Groetzinger* test is inapplicable because Messina Products is a limited liability company and thus should be considered a trade or business *per se*. While the Fund is correct that in *Fulkerson* the Seventh Circuit hinted that formal business organizations were presumptively trades or businesses, 238 F.3d at 895, later decisions have applied the *Groetzinger* framework to formal business organizations. See *Pioneer Ranch*, 494 F.3d at 577. *SCOFBP*, 738 F. Supp. 2d at 848.

In *Pioneer Ranch*, a married couple formed a limited liability partnership that owned and administered a cattle ranch used by the couple as a vacation home. 494 F.3d at 577. The couple claimed that the partnership was merely holding real estate as an investment and for personal purposes. The Seventh Circuit did not apply a *per se* rule; rather, the court applied *Groetzinger* "to determine whether the partnership was engaged in a trade or business or whether it operated the ranch for 'purely personal reasons.'" *SCOFBP*, 738 F. Supp. 2d at 848 (quoting *Pioneer Ranch*, 494 F.3d at 577). The court found the existence of a formal partnership critical under the *Groetzinger* test. The partnership agreement stated that its purpose was "to engage in the business of farming,

ranching, and any agricultural pursuit or undertaking." *Id*. at 578. The Seventh Circuit viewed this language to be "highly relevant" as evidence that the defendants intended to form a business and further opined that it "constitute[d] a statement against interest." *Id*. at 577-78.

Similarly, in *SCOFBP*, the court found the two companies in question liable because their operating agreements "express[ed] an intent to establish trades or businesses," and the defendants' admissions "corroborate[d] the apparent profit motive behind the companies." 738 F. Supp. 2d at 849. Furthermore, the companies reported tax earnings, applied for and received Federal Employer Identification Numbers, maintained offices, elected officials, and kept formal records of activities and expenditures. *Id*. On their federal income tax returns, the companies reported their primary business activity as "real estate" and claimed business-related deductions. *Id*. The court found claiming such business deductions to be "strong evidence" that the activities constituted trade or business. *Id*. (citing *Personnel Inc*., 974 F.2d at 795). Looking at these facts, the court held that the companies were not "merely passive holding companies" and thus they could be held liable under *Groetzinger*.

The undisputed facts here are similar to those in both *Pioneer Ranch* and *SCOFBP*. Messina Products is a limited liability company. The operating agreement states, in part, that the "Members have adopted a business plan for the development of properties and for the production, sale and marketing of gravel for road, subdivision, City and community development, both wholesale and retail." As noted above, this admission is "highly relevant" as evidence that Messina Products is a business. Moreover, just like in *SCOFBP*, Messina Products' tax returns include a Federal Employer Identification

Number and list its principle business activity as "real estate rental" as well as their income and expenses. See *Personnel*, 974 F.2d at 795. As in *Personnel*, this is "strong evidence" that Messina Products is a trade or business. Finally, the parties do not dispute that Stephen Messina was the President, Florence Messina was the Vice President and Secretary, and Vitto Gerome Palazzolo, an employee of Messina Trucking, handles Messina Products paperwork, prepares and files annual reports, and pays any bills.[6]

In sum, although the parties dispute whether Messina Products owned any actual real estate at the time of the withdrawal, Messina Products continually maintained and operated what it self-proclaimed to be a real estate rental company. Messina Products was not a "passive investment or some other 'sporadic activity,' such as 'a hobby, or an amusement diversion.'" *SCOFBP,* 738 F. Supp. 2d at 850 (quoting *Groetzinger*, 480 U.S. at 35). The evidence referenced above suffices to establish that Messina Products was "engaged in regular and continuous activity with the primary purpose of generating income or profit." *Id*. Accordingly, the Court concludes that Messina Products is engaged in trade or business under the *Groetzinger* test and is jointly liable for Messina Trucking's withdrawal liability.

C.     **The Messinas**

Stephen and Florence Messina can be found liable under § 1301(b)(1) only if their unincorporated activities constitute engaging in a trade or business under the two-part *Groetzinger* test. Their activities must be undertaken (1) for the primary purpose of income or profit; and (2) with continuity and regularity. *Groetzinger*, 480 U.S. at 35. The Fund argues that Stephen and Florence Messina should be held liable because their

---

[6] The court also notes that Messina Products owns a 50% interest in Messina Lombardo L.L.C., but that is not relevant to the decision.

rental activity—including renting land to Messina Trucking—was both for profit and continuous. But in *Fulkerson*, the Seventh Circuit found that "mere ownership of property (as opposed to activities taken with regard to the property) cannot be considered in determining whether conduct is regular and continuous" under *Groetzinger*. 238 F.3d at 895-96. The Court also found that "possession of property, be it stocks, commodities, leases, or something else, without more is the hallmark of an investment" and not a trade or business. *Id*. According to the court, § 1301(b)(1) "was not intended to impose automatic personal liability on individuals who own companies that are required to contribute to pension funds." *Id*. at 896. Thus, it is necessary to "distinguish trades or businesses from investments" and determine whether the rental of the Messinas property to both Messina Trucking and to others was both for profit and continuous. *Id*. at 895.

The facts in *Fulkerson* and *Nagy Ready Mix* are particularly helpful to the Court's inquiry. In *Fulkerson*, the defendant, who owned a trucking company that was the withdrawing employer, also leased several properties. 238 F.3d at 893. He rented one of the properties to a trucking company owned by his sons, through a triple net lease. *Id*. The defendant had only a few obligations associated with being a traditional landlord and devoted little time to such duties. *Id*. He merely paid the mortgage, accepted rent checks and reported the income on Schedule E of his tax returns. *Id*. Under those facts, the Seventh Circuit could not conclude that Fulkerson's conduct was regular and continuous. *Id.* at 896-97 (remanding to district court to consider Fulkerson's activities in detail, beyond his possession of the lease).

In *Nagy Ready Mix*, Nagy leased his property to Nagy Ready Mix, the withdrawing employer. 2011 WL 3021524, *6. He accepted "significant rental income"

and deposited the rent checks into a personal joint bank account. *Id*. He also reported this rental income on Schedule E of his tax returns. *Id*. In addition to the facts in common with *Fulkerson*, Nagy had a limited role in the construction of a reclaimer system and he deducted depreciation expenses. But Judge Aspen found that Nagy's limited role in the improvement was not enough tip the scale toward a trade or business; the tax benefits for renting a property and taking deductions was unconvincing since "such an argument could be made about any other traditional investment activity." *Id*. (quoting *White*, 258 F.3d at 644).

Returning to the case at hand, the court begins by reviewing all "activities taken with regard to the property." *Fulkerson*, 283 F.3d at 895. "Actions of a person, such as negotiating leases, researching properties, maintaining or repairing properties, etc. are business or trade conduct and are thus appropriately considered in determining whether the continuity and regularity prong of *Groetzinger* is satisfied." *Id.* As Judge Aspen also noted in *Nagy Ready Mix*, "because the MPPAA does not impose personal liability on the shareholders of a withdrawing entity, *Fulkerson* 238 F.3d at 895, we must be careful to focus our analysis on [the Messinas] conduct as landlord of the [property]—and not as owner and president of [Messina Trucking]." 2011 WL 3021524, *5.

This Court agrees with Judge Aspen that it should not impute the conduct of Messina Trucking employees to Stephen Messina in his capacity as landlord. *Id*. Thus, the Court considers only the Messinas conduct as landlord of the properties in question. The parties do not dispute that Stephen and Florence Messina own the 6386 Auburn Property and that they allowed Messina Trucking to operate its business from the Auburn Property. Messina Trucking paid rent for some time, but ceased paying rent for its use of

the property in 2005.  When it did pay rent, the rent was deposited into the Messinas joint personal account.  At no time did a written lease exist for Messina Trucking's use of the property, but in practice the Messinas pay the property taxes and Messina Trucking pays for the property insurance and utility bills, and all repairs and maintenance on the 6386 Property are done by Messina Trucking employees.

Stephen Messina also owns the two Merrill Road Properties, which he purchased because they were adjacent to the Auburn Property.  He used the property to build an addition to one of the existing buildings on the Auburn property.  There are three additional homes located on the Merrill Road Properties, which the Messinas rent out.  The homes are all leased pursuant to written residential lease agreements.  Either Stephen or his daughter, Anna, negotiate the terms of the leases and rent is paid to the Messinas and deposited into their joint personal bank account.  Messina Trucking employees take care of the maintenance work, snow removal, and lawn care on the properties, but they are not paid extra for their time.  Finally, the Messinas report the rental income from the properties they leased on Schedule E of their federal tax returns and deducted expenses.

The facts here are strikingly similar to those in *Fulkerson* and *Nagy Ready Mix*, including the fact that the Messinas leased their property to the withdrawing employer. And no additional relevant facts exist to warrant a determination that the Messinas' conduct is closer to a trade or business than to a passive investment.  *Nagy Ready Mix*, 2011 WL 3021524,*6.  Accordingly, the Court concludes that the Messinas' conduct is not a trade or business under the *Groetzinger* test and they cannot be held liable for withdrawal liability.

## IV. Conclusion

For the foregoing reasons, the court grants the Fund's motion for summary judgment [40] with respect to Auburn Supply Co. and Messina Products L.L.P. and grants Messina Control Group's motion for summary judgment [35] with respect to Stephen and Florence Messina. Both motions are denied in all other respects. Defendants' motion for leave to file an oversized brief [33] is granted.

Dated: September 27, 2011

_____
Robert M. Dow, Jr.
United States District Judge